UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICOLE V. REALS,<br><br>    Plaintiff,<br><br>    v.<br><br>SOCIAL SECURITY ADMINISTRATION,<br><br>    Defendant. | Case No. 14-cv-04243-KAW<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 15, 18 |

Plaintiff Nicole V. Reals seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, and the remand of this case for payment of benefits, or, in the alternative, for further proceedings. Pending before the Court is Plaintiff's motion for summary judgment and Defendant's cross-motion for summary judgment. Having considered the papers filed by the parties, and for the reasons set forth below, the Court DENIES Plaintiff's motion for summary judgment, and GRANTS Defendant's cross-motion for summary judgment.

## I. BACKGROUND

On September 19, 2011, Plaintiff Nicole V. Reals filed an application for Title II Disability Insurance Benefits. Administrative Record ("AR") 11, 203-205. Plaintiff's application alleges a disability onset date of March 12, 2010. AR 203. Plaintiff's claim was initially denied on June 20, 2012. AR 98-102. Plaintiff filed a Request for Reconsideration on June 22, 2012. AR 103. Plaintiff's Request for Reconsideration was denied on December 27, 2012, and Plaintiff filed a Request for Hearing on January 7, 2013. AR 106-110, 113. A hearing was held before Administrative Law Judge Katherine Loo on May 1, 2013. AR 11-21.

Plaintiff is thirty-eight years old. AR 203. She has one child, and is currently married. AR 33, 213, 299. Plaintiff graduated from high school. AR 20, 34. From January 2002 until her onset

date of March 12, 2010, Plaintiff worked as a medical fee clerk, a patient insurance clerk, a laboratory technician, and an admissions clerk. AR 19, 328.

In 2009 and 2010, Plaintiff sought medical treatment from Irina Jasper, M.D. for myalgia, weight gain, depressive symptoms, and occasional cough/bronchitis. AR 355-67. Dr. Jasper referred Plaintiff to Brian O'Connor, M.D., a rheumatologist, for further examination. AR 375. On February 25, 2010, Dr. O'Connor examined Plaintiff and noted that she was taking Lyrica and Lexapro and found the examination and history "quite significant" for fibromyalgia and noted asthma. *Id.* A sleep disorder study was ordered, but Plaintiff was not found to have sleep apnea or other sleep disorder. AR 379. Since testing negative for sleep apnea, Plaintiff was prescribed Cymbalta to address her fibromyalgia symptoms in April 2010. *Id.* Dr. O'Connor indicated that he believed that Plaintiff was disabled, but did not offer an assessment of her functional limitations. *Id.* In July 2010, he noted improvement with medication and reported identifying 16 tender points related to her fibromyalgia. AR 381-82.

In February, March, and July 2011, Plaintiff was treated by Murray Gold, M.D. for fibromyalgia and a rash. AR 400-02. In May 2011, Plaintiff underwent a colonoscopy that was essentially normal, with a minor polyp removed. AR 422. Other treatment records in 2011 indicate diagnoses of diverticulitis, gastritis, and irritable bowel syndrome. AR 445. An upper GI endoscopy was normal. AR 455. Cannabis use was approved by Andrew Dattila, D.O., in May 2011. AR 399.

On November 30, 2011, Plaintiff was seen for an initial visit with Douglas D. Zhang, M.D. AR 466. Dr. Zhang noted that Plaintiff reported a history of fibromyalgia, and also complained of migraine headaches. *Id.* Dr. Zhang advised that Plaintiff quit smoking. *Id.* Plaintiffs chest x-ray was suggestive of COPD. AR 467.

On February 7, 2012, Dr. Zhang provided a medical source statement, in which he opined that Plaintiff could lift and carry less than 10 pounds, stand and walk for 30 minutes in an eight-hour workday, and sit for two hours. AR 514. He opined that she could not climb, crouch, or crawl, and could occasionally balance, stoop, and kneel, and that she was limited to occasional handling and fingering, and should not work at heights. AR 515.

On March 14, 2012, Plaintiff was seen by Dr. Zhang for symptoms of bronchitis. AR 525. On March 30, 2012, Plaintiff was seen for a follow-up appointment, and she reported that she had stopped taking Neurontin for fibromyalgia pain due to a negative side effect (decreased libido), and would rather try other medications or go without medications. AR 526. On April 13, 2012, she was seen for shortness of breath and treated with a nebulizer. AR 527. On May 18, 2012, Plaintiff was treated for stomach pain and diarrhea. AR 529. On July 10, 2012, Plaintiff was seen in a follow-up appointment with no negative clinical signs, but, due to complaints about COPD symptoms, she was prescribed Spiriva. AR 554-55. Also on July 10, 2012, Dr. Zhang opined that Plaintiff was limited to no more than two hours of sitting and two hours of standing in an eight-hour workday, with lifting up to 10 pounds, and that she could rarely finger, grasp, and stoop, and could never handle or crouch. AR 728. On September 6, 2012, Plaintiff was seen for a checkup, and reported that she was eating and sleeping well, her mood was stable, and she had no complaints. AR 552. Dr. Zhang noted that Plaintiff was using over-the-counter ibuprofen as needed to treat her fibromyalgia symptoms. AR 553.

On February 22, 2012, Farah M. Rana, M.D., conducted a consultative physical examination. AR 517-19. At the exam, Plaintiff reported diffuse pain since 2007, exhaustion after three to four hours of activity, feeling tired, and worsening pain with cold weather. AR 517. Plaintiff also reported a recent diagnosis of COPD, but she continued to smoke cigarettes. AR 518. Plaintiff indicated that she was currently using albuterol, Symbicort, Lexapro, hydrochlorothiazide, and medical marijuana. *Id.* On examination, tenderness was noted in the cervical, thoracic, and lumbar spine, with normal range of motion and a negative straight leg raising test. *Id.* Plaintiff indicated tender points "all over," complaining of pain with even mild pressure despite there being no localized inflammation or swelling. *Id.* Dr. Rana concluded that Plaintiff presented with a history of fibromyalgia and COPD, and that she could stand and walk for six hours and sit for an unlimited period. AR 519. Plaintiff could carry 10 pounds frequently and 20 points occasionally, and with no other limitations noted. *Id.*

On March 1, 2012, Aruda Bodepudi, M.D., conducted a consultative psychiatric evaluation. AR 521-24. During the examination, Plaintiff denied any psychiatric problems, and

3

1  denied symptoms of feeling sad or anxious, helplessness, hopelessness, or worthlessness. AR 521.
2  Plaintiff reported that she continued to smoke cigarettes and used medical marijuana. AR 522.
3  Plaintiff described being able to drive occasionally, dress herself, dust, fix light meals, do laundry,
4  shop, visit with family, and watch television. *Id.* On examination, Plaintiff did not appear to be in
5  pain, her mood was euthymic, and her affect was appropriate. AR 523. Dr. Bodepudi made no
6  mental impairment diagnosis and assessed no limitations, and noted that Plaintiff appears "well
7  adjusted and with very good family support." *Id.*

8  In October 2012, Plaintiff rejoined Kaiser, and was seen by Jonathan Hall, M.D. AR 575.
9  On October 3, 2012, Plaintiff reported that she was going to the gym three days a week for 40
10 minutes and experienced some shortness of breath at night. AR 575. She reported that she smokes
11 one pack of cigarettes per week, and that she did not want narcotics to treat her fibromyalgia. AR
12 576. In January 2013, Plaintiff was enrolled in a chronic pain program for fibromyalgia and
13 chronic pelvic pain. AR 915. On January 22, 2013, Dr. Hall reviewed Plaintiff's medical records,
14 noting her request for paperwork to support her application for permanent disability benefits. AR
15 919. Dr. Hall noted that she reported being unable to sit or stand for prolonged periods or
16 complete repetitive activities, and that she has problems gripping things. *Id.* He noted that she
17 goes to the gym and exercises at home. *Id.* Dr. Hall further noted that Plaintiff continues smoking
18 and is using medical marijuana. *Id.* Dr. Hall indicated that he would "support her in her quest for
19 disability" for her fibromyalgia. AR 920. On January 24, 2013, Plaintiff was referred to physical
20 therapy with notations that her reported symptoms included abdominal pain, low back pain, and
21 fibromyalgia pain with flares about once per month lasting a few hours. AR 923.

22 Following the hearing, medical interrogatories were propounded to Mark O. Farber, M.D.
23 AR 1044-47. Dr. Farber identified diagnoses of asthma, fibromyalgia, and hypothyroidism. AR
24 1044. Dr. Farber concluded that Plaintiff's impairments did not meet or medically equal the
25 requirements of a listing. AR 1045. Dr. Farber also assessed functional limitations and found that
26 Plaintiff had the residual functional capacity to perform light work, including lifting and carrying
27 10 pounds frequently and 20 pounds occasionally, sitting for six to eight hours with normal
28 breaks, and avoiding significant dust, fumes, and respiratory irritants. AR 1046.

4

In a decision dated July 12, 2013, the ALJ found that Plaintiff was not disabled at any time from March 12, 2010 through the date of the decision. AR 21. On August 21, 2013, Plaintiff requested that the Appeals Council review the ALJ's decision. AR 6. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied review on July 17, 2014. AR 1-5. Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

On August 26, 2015, Plaintiff filed her motion for summary judgment. (Pl.'s Mot., Dkt. No. 15.). On September 21, 2015, Defendant filed its opposition and cross-motion for summary judgment. (Def.'s Opp'n, Dkt. No. 18.) Plaintiff did not file a reply, so the motions are fully briefed.

## II.     LEGAL STANDARD

A court may reverse the Commissioner's denial of disability benefits only when the Commissioner's findings are 1) based on legal error or 2) are not supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is "more than a mere scintilla but less than a preponderance"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1098; *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). In determining whether the Commissioner's findings are supported by substantial evidence, the Court must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Id.* "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

Under Social Security Administration ("SSA") regulations, disability claims are evaluated according to a five-step sequential evaluation. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). At step one, the Commissioner determines whether a claimant is currently engaged in substantial gainful activity. *Id.* If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments," as defined in 20 C.F.R. § 404.1520(c). *Reddick*, 157 F.3d 715 at

721. If the answer is no, the claimant is not disabled. *Id.* If the answer is yes, the Commissioner proceeds to step three, and determines whether the impairment meets or equals a listed impairment under 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If this requirement is met, the claimant is disabled. *Reddick*, 157 F.3d 715 at 721.

If a claimant does not have a condition which meets or equals a listed impairment, the fourth step in the sequential evaluation process is to determine the claimant's residual functional capacity ("RFC") or what work, if any, the claimant is capable of performing on a sustained basis, despite the claimant's impairment or impairments. 20 C.F.R. § 404.1520(e). If the claimant can perform such work, he is not disabled. 20 C.F.R. § 404.1520(f). RFC is the application of a legal standard to the medical facts concerning the claimant's physical capacity. 20 C.F.R. § 404.1545(a). If the claimant meets the burden of establishing an inability to perform prior work, the Commissioner must show, at step five, that the claimant can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d 715 at 721. The claimant bears the burden of proof in steps one through four. *Bustamante v. Massanari*, 262 F.3d 949, 953-954 (9th Cir. 2001). The burden shifts to the Commissioner in step five. *Id.* at 954.

### III.   THE ALJ'S DECISION

As an initial matter, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2015. AR 13.

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of March 12, 2010. AR 13.

At step two, the ALJ found that Plaintiff had the following severe impairments: chronic pain syndrome, fibromyalgia, chronic pulmonary disease, marijuana use, migraine headaches, hypothyroidism, and diverticulitis. AR 13.

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment in 20 C.F.R. § 404, Subpart P, Appendix 1. AR 14.

Before considering step four, the ALJ determined that Plaintiff has the residual functional capacity to

> perform light work as defined in 20 C.F.R. § 404.1567(b)(lift and carry 10 pounds frequently and 20 pounds occasionally; sit for six hours, and stand/walk for six hours) except [ ] could sit for six to eight hours. She must avoid work environments with significant dust, fumes, or other respiratory irritants.

AR 15. At step four, the ALJ concluded that Plaintiff was capable of performing past relevant work as a medical fee clerk, a patient insurance clerk, a laboratory technician, and an admissions clerk. AR 19. Lastly, the ALJ proceeded to step five, and concluded that, while Plaintiff was capable of performing past relevant work, there were other jobs that exist in significant numbers in the national economy that Plaintiff could perform and so she was not disabled for the purposes of the Social Security Act. AR 20-21.

## IV.   DISCUSSION

In her motion for summary judgment, Plaintiff argues that the ALJ erred in denying her application for social security benefits for three reasons: (1) the ALJ erred by improperly affording the most weight to non-treating physicians; (2) the ALJ did not have all of Plaintiff's medical evidence before her; and (3) there is no cure for fibromyalgia. (Pl.'s Mot. at 2-5.)[1]

### A.   Medical Opinions

Plaintiff argues that the ALJ erred by assigning the most weight to non-treating physicians. (Pl.'s Mot. at 2.)

The Ninth Circuit distinguishes among the opinions of three types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The opinions of treating medical sources may be rejected only for clear and convincing reasons if not contradicted by another doctor. *Id.* Where the record contains conflicting medical evidence, the ALJ must make a credibility determination and resolve the conflict. *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (quoting *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence...." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216

---

[1] Plaintiff is proceeding pro se, so the Court interprets her motion as raising the following arguments, despite the fact that they are not fully developed.

(9th Cir. 2005). "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (citations omitted). A consulting physician's opinions may serve as substantial evidence when they are consistent with independent clinical findings or other evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

Here, the ALJ gave the greatest weight to the opinion Dr. Farber, who reviewed the record as a whole and completed medical interrogatories at the ALJ's request. AR 18, 1044-65. While Dr. Farber identified diagnoses of asthma, fibromyalgia (based on pain and tender points), and hypothyroidism, he concluded that Plaintiff's impairments did not meet or medically equal the requirements of a listing. AR 1044-45. Dr. Farber concluded Plaintiff was capable of light exertional work, including lifting and carrying 10 pounds frequently and 20 pounds occasionally, sitting for six to eight hours with normal breaks, but that she should avoid significant dust, fumes, and respiratory irritants. AR 1046. Dr. Farber indicated that he agreed with the residual functional capacity determined by Dr. Rana. AR 1056. He noted that Plaintiff continued to smoke even after being diagnosed with COPD symptoms and that her fibromyalgia symptoms were not very severe. AR 1059, 1065.

The ALJ also gave great weight to the opinion of Dr. Rana, who performed a consultative internal medical examination. AR 18, 517-19. An examining physician's opinion constitutes substantial evidence because it rests on a doctor's own independent examination of the claimant. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Plaintiff reported diffuse pain since 2007, exhaustion after three to four hours of activity, feeling tired, and worsening pain with cold weather. AR 517. Plaintiff reported that she obtained some relief from a hot soak. Plaintiff said she could do chores around the house but needed to take breaks and rest after a few hours of activity. AR 517. Upon examination, tenderness was noted in the cervical, thoracic, and lumbar spine, while Plaintiff indicated tender points "all over," and complained of pain with even mild pressure. AR 518. Plaintiff's shoulder, elbow, wrist, knee, and ankle joints were all mildly tender to touch, range of motion was within normal limits, and no localized inflammation or swelling was

8

noted. AR 518. Neurological examination findings revealed full (5/5) motor strength throughout, normal (2+) reflexes, and no sensory deficits. AR 519. Dr. Rana concluded that Plaintiff presented with a history of fibromyalgia and COPD. *Id.* Dr. Rana opined that Plaintiff had the RFC to perform light exertional work, and could stand and walk for six hours and sit for an unlimited period in an eight hour day, carry 10 pounds frequently and 20 pounds occasionally, and had no other limitations. AR 519.

The ALJ assigned the greatest weight to the opinion of Dr. Farber, because he was the only qualified medical professional who had the advantage of reviewing the entire record, his opinion was consistent with the overall record, and he is familiar with the Social Security program requirements. AR 18. "Although the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the record." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). The ALJ noted that it was consistent with Dr. Rana's opinion, which was also assigned great weight, because Dr. Rana personally examined Plaintiff and her assessment was consistent with the record. AR 18. Taken together, the opinions of Drs. Farber and Rana constitute substantial evidence.

The ALJ assigned less weight to Dr. Zhang, because his opinion is not well supported by his treatment notes. AR 18. An ALJ can reject a treating physician's assessment of limitations when the physician's clinical notes and other recorded observations regarding the claimant's capabilities contradict the assessment. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (treating physician's opinion may be rejected if unsupported by doctor's examination record). Here, Dr. Zhang initially opined that Plaintiff could lift and carry one pound, stand and walk for 30 minutes, and sit for 2 hours in an eight-hour workday. AR 514-15. Dr. Zhang later opined that Plaintiff could lift up to 10 pounds occasionally and sit and stand for 2 hours in an eight-hour workday. AR 728. His treatment notes, however, generally reveal unremarkable findings upon physical examination. AR 466-67, 525-29. Plaintiff's reported daily activities, including shopping, doing laundry, and caring

for her special needs son, suggest that she is not limited to the extent opined by Dr. Zhang. AR 19. Thus, as the ALJ indicated, Dr. Zhang appeared to adopt as true all of Plaintiff's allegations of pain without taking into account such factors as her daily activities, her voluntarily stopping prescription medications, and that her fibromyalgia pain appeared to be controlled with ibuprofen. *Id.* For example, on March 30, 2012, Plaintiff reported that she had stopped taking Neurontin for fibromyalgia pain due to loss of libido, and that she stated that she preferred to stop treating her condition with prescription medication. AR 18, 526.  The ALJ noted that there is no indication that she restarted prescription medication. AR 18.  Also, Dr. Hall reported that Plaintiff went to the gym three times per week and exercised at home, and did not want to use narcotics to control her fibromyalgia pain, but that he would support her application for disability. AR 919-20.

In light of the foregoing, the ALJ properly made a credibility determination to resolve the conflict among the medical opinions regarding the severity of Plaintiff's condition as they relate to her residual functional capacity.  Thus, Plaintiff's argument that the non-treating physicians' opinions were improperly given more weight is without merit.

### B. Absence of prior medical evidence is immaterial

Plaintiff contends that the ALJ did not have all of Plaintiff's medical evidence before her and that the records of her seizure history must be considered. (Pl.'s Mot. at 4-5.)

Defendant contends that the additional evidence has no bearing on whether the ALJ's July 12, 2013 decision is supported by substantial evidence. (Def.'s Opp'n at 7.)  Specifically, the Commissioner argues that the ALJ determined that Plaintiff was not disabled from the alleged onset date of March 12, 2010 through the date of the decision. *Id.*  Therefore, since the bulk of the evidence is from outside the period of consideration, the evidence is immaterial. *Id.*  Indeed, to be material, the evidence must relate to the time period that was before the ALJ and be a condition "squarely before" the Secretary.  *Sanchez v. Sec'y of Health & Human Servs.*, 812 F.2d 509, 511 (9th Cir. 1987).  Here, Plaintiff has failed to explain how evidence of childhood febrile seizures, the most recent of which appears to have occurred in 1986, are relevant to the ALJ's determination that she was not disabled from March 10, 2010 through July 12, 2013.  Additionally, the possibility of a seizure diagnosis was not considered by the ALJ, and, therefore, was not "squarely

1 before" the Secretary.

2 Accordingly, the Court finds that the additional medical evidence has no bearing on
3 whether Plaintiff was disabled between March 12, 2010 and July 12, 2013, and, therefore, remand
4 on this issue is inappropriate.

### C. The absence of a cure is not dispositive

Plaintiff argues that the absence of a cure for her primary condition of fibromyalgia requires that she be considered disabled under the Social Security Act. (Pl.'s Mot. at 3.) To the contrary, the existence of a disability alone is not dispositive. Here, Plaintiff's fibromyalgia was determined to be a severe impairment at step two. *See* discussion *supra* Part III. But "[t]he mere existence of an impairment is insufficient proof of a disability." *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993)(citing *Sample v. Schweiker*, 694 F.2d 639, 642–43 (9th Cir. 1982)). Indeed, "[a] claimant bears the burden of proving that an impairment is disabling." *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir. 1985). Thus, "[t]he applicant must show that he is precluded from engaging in not only his 'previous work,' but also from performing 'any other kind of substantial gainful work' due to such impairment." *Matthews*, 10 F.3d at 680 (quoting 42 U.S.C. § 423(d)(1)(A)). Thus, to the extent that Plaintiff maintains that the incurable nature of her fibromyalgia diagnosis renders her automatically disabled and qualifies her for benefits under the Social Security Act, she is incorrect. To the contrary, Plaintiff bears the burden of showing that she is unable to work, which she has not done.

Moreover, to the extent that Plaintiff may be arguing that the ALJ erred in the determination that she had the RFC to perform light work, the ALJ provided sufficient reasons to afford more weight to the opinions of the non-treating physicians. *See* discussion *supra* Part IV.A.

Accordingly, the fact that Plaintiff has fibromyalgia, for which there is no cure, does not render her disabled under the Social Security Act.

///

///

///

///

## V. CONCLUSION

For the reasons set forth above, Plaintiff's motion for summary judgment is DENIED, and Defendant's cross-motion for summary judgment is GRANTED.

IT IS SO ORDERED.

Dated: September 26, 2016

KANDIS A. WESTMORE
United States Magistrate Judge

12